**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**The Karen D. Barney Revocable Trust, et al.,**

**Plaintiffs,**

**-against-**

**Cava Capital, LLC, et al.,**

**Defendants.**

**1:26-cv-03374 (VM) (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Plaintiffs The Karen D. Barney Revocable Trust, Adam Okun, Jeffrey Olsen, SnJ LLC, Jonathan Webb and The James Matthew Zundel Revocable Trust (collectively, "Plaintiffs") bring this action against Defendants Cava Capital, LLC ("Cava"), Cava Capital SPV XVI A, LLC ("Cava SPV"), South Main Holdings, LLC ("South Main") and Geoff Schneider ("Schneider") (collectively, the "Cava Defendants"),[1] and Christine Hunsicker, Jaswinder Pal Singh, George Goldenberg, Chirag Jain, Scott Callon and John Hennessy (collectively, the "CaaStle Defendants") (together with the Cava Defendants, the "Defendants"), alleging fraud-related claims associated with Plaintiffs' investment in Cava SPV, which was a special purpose vehicle that was formed for the purpose of making investments in CaaStle, Inc. ("CaaStle").[2] (*See* Compl. ¶¶ 1-20.)

Now before the Court is a motion by the Cava Defendants, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, seeking to compel Plaintiffs to arbitrate their claims

[1] While Bob Geiman had been named in the Complaint in this action as one of the Cava Defendants, the claims against him were dismissed without prejudice on July 21, 2026. (*See* 7/21/26 Not., ECF No. 44.)

[2] CaaStle filed a petition in bankruptcy and is not a party in this action. (*See* Compl. ECF No. 1, at p. 2 & ¶ 47.)

against the Cava Defendants and to stay this action pending arbitration. (*See* Cava Defs.' 8/5/26 Not. of Mot., ECF No. 45; Cava Defs.' 8/5/26 Mem., ECF No. 47, at 1.) For the reasons set forth below, the Cava Defendants' motion is GRANTED.[3]

## BACKGROUND

Plaintiffs purchased units in Cava SPV that were sold by Cava. (*See* Compl. ¶¶ 25-30, 80.) The Amended and Restated Limited Liability Company Agreement of Cava SPV was executed effective as of March 4, 2019, and amended and restated as of October 5, 2023 and January 22, 2025 (Ex. A to DiBlasi Decl., ECF No. 46-1), and is referred to by the Cava Defendants and Plaintiffs as the "Operating Agreement." (*See* DiBlasi 8/5/26 Decl., ECF No. 46, ¶ 3; Compl. ¶¶ 81-83.) South Main was named in the Operating Agreement as Manager of Cava SPV and the Operating Agreement was signed by Schneider, on behalf of South Main.[4] (*See* Op. Agt. at pp. 8, 41.) Plaintiffs also signed the Operating Agreement. (*See* Pls.' 9/2/26 Opp. Mem., ECF No. 48, at 9-10; *see also* Compl. ¶ 189.)

Pursuant to the terms of the Operating Agreement, the business of Cava SPV was "to make investments in CaaStle and to hold, manage and dispose of such investments, and to enter into, deliver and perform under all agreements, documents, instruments or certificates in connection with the making, holding, managing and disposing of all such investments, and . . . to conduct any other lawful business directly or indirectly related thereto." (Op. Agmt. § 2.03.) The

[3] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." *McCants v. Team Elec., Inc.*, No. 19-CV-09565 (AJN) (RWL), 2021 WL 653122, at *1 n.1 (S.D.N.Y. Feb. 19, 2021) (quoting *Chen-Oster v. Goldman Sachs*, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases)).

[4] South Main also was a Class B Member. (*See* Op. Agt. at p. 41.)

Operating Agreement and the legal relations between the parties are governed by Delaware law. (*See id*. § 11.14 ("This Agreement and the legal relations between the parties hereto shall be governed by and construed in accordance with the laws of the State, without regard to its conflict of laws doctrine."); *see also id*. § 1.01 (defining "State" as the State of Delaware).)

The Operating Agreement provides that "[a]ny controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof, shall be settled by final and binding arbitration in Fairfield County, Connecticut administered by JAMS under its commercial arbitration rules." (Op. Agmt. § 11.14.) The Operating Agreement further provides that, subject to § 11.14, the parties expressly submitted to the exclusive venue and personal jurisdiction of the state and federal courts located in Fairfield County, Connecticut for the resolution of disputes arising under the Agreement. (*Id*. § 11.13.)

On April 23, 2026, Plaintiffs commenced this action against the CaaStle Defendants and the Cava Defendants. (*See* Compl.) They principally alleged that the CaaStle Defendants engaged in a conspiracy that defrauded investors with the aid of the Cava Defendants by overstating CaaStle's financial condition to investors and withholding other material information. (*See id*. ¶¶ 6-9, 56, 80, 95, 100.) Plaintiffs asserted the following claims in the Complaint: Violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 against Hunsicker and Singh (Count I); violations of Section 20(a) of the Exchange Act against all CaaStle Defendants (Count II); breach of Fiduciary Duty against South Main and Schneider (Count III); breach of contract against South Main (Count IV); common law fraud against Hunsicker and Singh (Count V); aiding and abetting fraud against all Defendants (Count VI); civil conspiracy against Hunsicker, Singh, Goldenberg, Jain and Callon (Count VII); negligent misrepresentation

against Hunsicker, Singh, Goldenberg, Jain, Callon and the Cava Defendants (Count VIII); and aiding and abetting negligent misrepresentation against all Defendants (Count IX). (*See id*. ¶¶ 162-231.)

On June 8, 2026, the Court stayed this action until October 23, 2026 in accordance with an Order of the Bankruptcy Court in the *In re CaaStle Inc*. bankruptcy proceeding.[5] (6/8/26 Order, ECF No. 27; *see also* Pls.' 6/5/26 Ltr., ECF No. 17 (describing Bankruptcy Stay Order).) On July 20, 2026, Plaintiffs and the Cava Defendants stipulated to lifting the stay for the purpose of the Cava Defendants moving to compel arbitration (*see* 7/20/26 Stip., ECF No. 40), and on July 21, 2026, the Stipulation was "So Ordered" by the Court. (See 7/21/26 Order, ECF No. 43.) On August 5, 2026, the Cava Defendants filed the motion to compel arbitration that is now before the Court. (*See* Cava Defs.' 8/5/26 Not. of Mot.) On September 2, 2026, Plaintiffs filed their opposition papers. (*See* Pls.' 9/2/26 Opp. Mem.; Walker 9/2/26 Decl., ECF No. 49.) On September 18, 2026, the Cava Defendants filed their reply. (*See* Cava Defs.' 9/18/26 Reply, ECF No. 59.)

## LEGAL STANDARDS

### I. FAA

The FAA "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006)). "Enacted to reverse centuries of judicial hostility to

[5] Notwithstanding the stay, Plaintiffs were permitted to take any actions reasonably necessary to effect service on Defendants. (*See* 6/8/26 Order.) Plaintiffs' counsel has been attempting to serve Defendants Callon and Jain in Japan and India, respectively (*see* Pls.' 6/5/26 Ltr. at 2), but the docket does not reflect that service has yet been accomplished.

arbitration agreements, the FAA embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]" *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 100 (S.D.N.Y. 2017) (citing *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 119 (2d Cir. 1991); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)) (internal quotation marks and alterations omitted); *see also Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (quoting Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution.").

Section 2 of the FAA provides, in relevant part, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation and compel arbitration." *McCants*, 2021 WL 653122, at *3 (citing FAA §§ 3, 4).

## II. <u>Enforcement Of Arbitration Agreement By Nonsignatory</u>

"The Supreme Court has instructed that state law governs whether a non-signatory may enforce an arbitration clause." *Doe v. Trump Corp.*, 6 F.4th 400, 412 n.8 (2d Cir. 2021) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)). "Like many jurisdictions, Delaware allows a nonsignatory to a contract to compel a signatory to arbitrate under an equitable

estoppel theory."[6] *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. CIV.A. 2037-N, 2006 WL 2473665, at *4-5 (Del. Ch. Aug. 22, 2006) (citing cases). "This theory compels a signatory to arbitrate with a nonsignatory in two circumstances[.]" *Id*.

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Id*. (quoting *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)) (emphasis omitted); *see also Maldonado v. Nat'l Football League*, No. 22-CV-02289 (ALC), 2023 WL 4580417, at *4 (S.D.N.Y. July 18, 2023) (citing *Wilcox & Fetzer*).

## III. <u>Scope Of Stay</u>

The FAA provides that if a court determines that an issue "is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . .." 9 U.S.C. § 3. "[A] mandatory stay is consistent with the FAA's underlying policy to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Gilbert v. Dell Techs., Inc.*, 415 F. Supp. 3d 389, 400 (S.D.N.Y. 2019) (quoting *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015)). "When all the claims in an action have been referred to arbitration, district courts must

[6] As noted in the Background section, *supra*, the Operating Agreement provides that the Agreement and the legal relations between the parties are governed by Delaware law. (*See* Op. Agmt. § 11.14.)

stay the proceedings pending arbitration when a stay has been requested." *Id*. (citing *Katz*, 794 F.3d at 347).

"If some, but not all, claims are subject to arbitration, however, the court must 'sever those claims subject to arbitration from those adjudicable only in court,' . . . and determine 'whether to stay the balance of the proceedings pending arbitration[.]'" *Hickey v. Smith*, No. 23-CV-02538 (MKV), 2025 WL 692052, at *12 (S.D.N.Y. Mar. 3, 2025) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc*., 58 F.3d 16, 20 (2d Cir. 1995); *Guyden v. Aetna, Inc*., 544 F.3d 376, 382 (2d Cir. 2008)). "A court may also 'sever even a part of a claim, where that claim raises both arbitrable and non-arbitrable issues.'" *Id*. (quoting *Collins & Aikman*, 58 F.3d at 20). "The decision to stay proceedings 'is one left to the district court . . . as a matter of its discretion to control its docket.'" *Id*. (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 20 n.23 (1983)).

## IV. <u>Motion To Compel Arbitration</u>

"In resolving a motion to compel arbitration, a court must determine: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) where some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." *Saleh v. Digital Realty Tr., Inc.*, 21-CV-09005 (PAE), 2022 WL 3139733, at *4 (S.D.N.Y. Aug. 5, 2022) (citing *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008)).

"In deciding a motion to compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment." *Cooper v. Ruane Cunniff & Goldfarb Inc*., 990

F.3d 173, 179-80 (2d Cir. 2021) (citing *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016)). "Courts must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and must draw all reasonable inferences in favor of the non-moving party." *Id*. at 180 (internal citation, quotation marks and alterations omitted).

"The party moving to compel arbitration 'must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue.'" *Saleh*, 2022 WL 3139733, at *4 (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)). "The moving party need not 'show initially that the agreement would be enforceable, merely that one existed.'" *Id.* (quoting *Hines*, 380 F. App'x at 24). "Thereafter, the party 'seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010)).

**ANALYSIS**

In opposition to the Cava Defendants' motion to compel arbitration, Plaintiffs only make two arguments. First, Plaintiffs argue that the arbitration provision in the Operating Agreement is void and unenforceable. (*See* Pls.' 9/2/26 Opp. Mem. at 7-10.) Thus, the Court first addresses below whether Plaintiffs are bound by the agreement to arbitrate that is contained in the Operating Agreement.

Second, Plaintiffs argue that the arbitration clause in the Operating Agreement does not apply to the nonsignatory Defendants. (Pls.' 9/2/26 Opp. Mem. at 10-11.) Thus, after addressing the first argument, the Court addresses below whether the Cava Defendants who are not parties

to the Operating Agreement (*i.e.*, Cava and Schneider) can enforce the agreement to arbitrate, as they seek to do.

Finally, the Court addresses below the scope of the stay pending arbitration. The Cava Defendants seek to stay all proceedings. (*See* Cava Defs.' 8/5/26 Mem. at 17.) In their opposition memorandum, Plaintiffs make no arguments regarding the scope of any stay. (*See generally* Pls.' 9/2/26 Opp. Mem.)

## I. Whether Plaintiffs Are Bound By Agreement To Arbitrate

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The Court finds that the parties entered into a valid agreement to arbitrate. Plaintiffs admit that they signed the Operating Agreement for Cava SPV (*see* Pls.' 9/2/26 Opp. Mem. at 9-10) and that the Agreement contains in Section 11.14 an agreement to arbitrate. (*See* Op. Agmt. § 11.14.) Moreover, the claims against two of the Cava Defendants (*i.e.*, Cava SPV itself and South Main, the Manager for Cava SPV) plainly fall within the scope of the agreement to arbitrate, which covers "[a]ny controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof." (*See id.*) Indeed, the Complaint expressly references the Operating Agreement (*see* Compl. ¶¶ 81-83) and one of Plaintiffs' claims against South Main (Count IV) is that South Main breached the Operating Agreement. (*See id.* ¶¶ 188-94.)

In opposition to the Cava Defendants' motion, Plaintiffs argue that "Plaintiffs' investments were procured by fraud" and that "Plaintiffs would not have agreed to do *anything*

with the Cava Defendants, including arbitrate any disputes they might have with them, had they known that CaaStle was a complete sham." (Pls.' 9/2/26 Opp. Mem. at 8-9 (emphasis in original).) "Courts have, however, drawn a distinction between disputes as to the validity or existence of the arbitration clause itself and disputes as to the validity of the larger contract in which the arbitration clause can be found." *Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*, 641 F. Supp. 2d 196, 205 (S.D.N.Y. 2009). "The Supreme Court has held that, when a party challenges the validity of a contract as a whole, and does not expressly contest the validity of an arbitration provision within it, the challenge to the overall contract must be resolved by an arbitrator; the arbitration provision is considered evidence that the parties intended to arbitrate any dispute over the contract's validity." *Id*. (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 403-04 (1967)); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("a party's challenge . . . to the contract as a whole[] does not prevent a court from enforcing a specific agreement to arbitrate").

Citing to their Complaint, Plaintiffs argue that the "agreement to arbitrate [ ] disputes is void and unenforceable." (Pls.' 9/2/26 Opp. Mem. at 8 (emphasis omitted) (citing Compl. ¶ 84).) However, "to prevail on such an argument, Plaintiffs must 'demonstrate that the arbitration provision was induced by fraud and include particularized facts specific to the arbitration clause which indicate how it was used to effect the scheme to defraud.'" *Guerrero v. GoPuff*, No. 24-CV-06727 (JHR) (GS), 2025 WL 3539105, at *13 (S.D.N.Y. Dec. 10, 2025) (quoting *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 197 (S.D.N.Y. 2006)).

In the present case, it is readily apparent that Plaintiffs are challenging the validity of the Operating Agreement as a whole. They are not contesting the validity of the arbitration provision

itself. Under controlling Supreme Court precedent, the arbitrator must resolve the challenge to the validity of the Operating Agreement. Accordingly, the Court finds that Plaintiffs are bound by their agreement to arbitrate.[7]

## II. Whether Cava And Schneider Can Enforce Agreement To Arbitrate

The Cava Defendants argue that, even though Cava and Schneider are not signatories to the Operating Agreement, both are entitled to compel arbitration under principles of equitable estoppel. (*See* Cava Defs.' 8/5/26 Mem. at 9-12.) The Court agrees.[8]

Under Delaware law, "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Wilcox & Fetzer*, 2006 WL 2473665, at *5. In the present case, Plaintiffs allege substantially interdependent and concerted misconduct by Cava SPV and South Main (*i.e*., two of the four Cava Defendants), on the one hand, and Cava and Schneider (*i.e*., the remaining two

---

[7] Plaintiffs' argument that "the arbitration clause is void on grounds of mutual mistake of fact" (*see* Pls.' 9/2/26 Opp. Mem. at 9) is meritless. Under Delaware law, which is applicable here (*see* footnote 6, *supra*), "the plaintiff must show that both parties were mistaken as to a material portion of the written agreement." *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002). Even assuming, *arguendo*, that the Court (and not the arbitrator) was to decide the mutual mistake issue and that Plaintiffs can show that they were somehow mistaken as to a material portion of the Operating Agreement, Plaintiffs have made no showing that Cava SPV, the counterparty to the Operating Agreement, was mistaken in any way.

[8] The Cava Defendants also contend Schneider is entitled to compel arbitration under agency principles. (*See* Cava Defs.' 8/5/26 Mem. at 12-14.) The Court agrees. Schneider was the Managing Partner of South Main (*see* Compl. ¶ 34), his alleged misconduct occurred in that capacity (*see id.*) and he signed the Operating Agreement in that capacity. (*See* Op. Agmt. at p. 41.) Thus, the claims against him are subject to arbitration. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." (citations omitted)); *see also Ross v. Finzer*, No. 25-CV-01179 (DEH) (VF), 2025 WL 2860070, at *6 (S.D.N.Y. Oct. 8, 2025) (citing *Roby*), *objections overruled*, 2026 WL 2020962 (S.D.N.Y. July 13, 2026).

Cava Defendants), on the other. Plaintiffs themselves lump all four together with respect to many of their claims, asserting that the Cava Defendants together engaged in various misconduct. (*See* Compl. ¶¶ 80, 98-100, 110, 121, 209.) Plaintiffs did so because of the relationships that existed between and among Cava SPV, South Main, Cava and Schneider. (*See id*. ¶¶ 31-34.) Moreover, in Count III of the Complaint, Plaintiffs allege a breach of fiduciary duty claim against both South Main and Schneider, arguing that both owed fiduciary duties to Plaintiffs. (*See id*. ¶¶ 179-87.) Accordingly, applying equitable estoppel principles, the Court finds that Cava and Schneider can enforce the arbitration clause contained in the Operating Agreement.[9]

## III. <u>Scope Of Stay</u>

Finally, the Court addresses the scope of the stay pending arbitration.[10] The Court begins by addressing the Counts in the Complaint that plainly are arbitrable.

Two of the Counts (*i.e.*, Counts III and IV) are asserted against one of more of the Cava Defendants, and do not name any of the CaaStle Defendants. (*See* Compl. ¶¶ 179-94.) Since the claims against the Cava Defendants are subject to arbitration, the Court must sever and stay Counts III and IV pending arbitration. *See Hickey*, 2025 WL 692052, at *12; *see also Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("[A] court *must* stay its proceedings if it is satisfied that an issue before it is arbitrable . . ..") (emphasis supplied). In addition, there are three Counts (*i.e.*, Counts VI, VIII and IX) that are asserted against both CaaStle Defendants and Cava

[9] Plaintiffs' argument that Cava and Schneider cannot invoke equitable estoppel because of their unclean hands (*see* Pls.' 9/2/26 Opp. Mem. at 10) lacks merit. "Holding that the underlying tortious conduct triggers the unclean hands doctrine would effectively subvert [the] well-established body of law" that "appl[ies] equitable estoppel to allow non-signatories to enforce arbitration provisions against [tort] claims." *Eventus Holdings LLC v. Cliq, Inc*., 2026 WL 1363765, at *8 (Del. Super. Ct. May 14, 2026).

[10] As noted above, the Cava Defendants seek to stay all proceedings (*see* Cava Defs.' 8/5/26 Mem. at 17), but Plaintiffs make no arguments regarding the scope of any stay. (*See generally* Pls.' 9/2/26 Opp. Mem.)

Defendants. (*See* Compl. ¶¶ 202-10, 218-31.) Because the claims against the Cava Defendants are subject to arbitration, the Court must sever and stay pending arbitration those parts of Counts VI, VIII and IX that are alleged against the Cava Defendants. *See Hickey*, 2025 WL 692052, at *12; *see also Shearson/Am. Express, Inc.*, 482 U.S. at 226.

The Cava Defendants request that all proceedings be stayed pending arbitration (*see* Cava Defs.' 8/5/26 Mem. at 17), which would include Counts I, II, V and VII, which only are alleged against CaaStle Defendants, and those parts of Counts VI, VIII and IX that are alleged against CaaStle Defendants. As noted earlier, when presented with both arbitrable and nonarbitrable claims, courts have discretion to stay the nonarbitrable claims. *See Moses H. Cone*, 460 U.S. at 20 n.23.

The Court, in its discretion, hereby stays all proceedings pending arbitration. "A stay is usually appropriate where arbitrable and non-arbitrable claims arise out of the same set of facts and arbitration may decide the same facts at issue in the litigation." *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 489 (S.D.N.Y. 2011) (Marrero, J.) (citation omitted). In the present case, Counts VI (aiding and abetting fraud), VIII (negligent misrepresentation) and IX (aiding and abetting negligent misrepresentation) contain both arbitrable claims (to the extent they are alleged against Cava Defendants) and nonarbitrable claims (to the extent they are alleged against CaaStle Defendants). Thus, such claims obviously arise out of the same set of facts and the arbitrator may decide the same facts at issue in this action. The Court is mindful that, if a stay of the entire action is not granted, "litigation of the [overlapping] claims against the [CaaStle Defendants] may effectively force the [Cava Defendants] to participate in this litigation, overtly or behind the scenes . . . [which] would be in derogation of the presumed goal of the

parties to the arbitration agreement[] to avoid being drawn into needless litigation." *Yost v. Everyrealm, Inc.*, No. 22-CV-06549 (PAE), 2023 WL 2859160, at *12 (S.D.N.Y. Apr. 10, 2023) (citing cases). In these circumstances, the Court finds that a stay is appropriate.

## CONCLUSION

For the foregoing reasons, the Cava Defendants' motion (ECF No. 45) is GRANTED, and this case is stayed in its entirety.

**SO ORDERED.**

Dated: New York, New York
September 19, 2026

Stewart d. Aaron
______________________________
STEWART D. AARON
United States Magistrate Judge